# THE OFFICE OF THE
# DIRECTOR OF PUBLIC PROSECUTIONS

TERRITORY OF THE VIRGIN ISLANDS

*Our Ref:* AG/27/041

*Your Ref:*

21st August, 2007

TO: Lystra Blake, Esq.
Associate Director
United States Department of Justice
Office of International Affairs
Criminal Division
1-301 New York Avenue
8th Floor
Washington, D.C. 20005
USA

### Re: Request For Assistance In The Investigation Of IPOC International Growth Fund Limited And Ipoc Group, Mr. Jeffrey Galmond And Mr. Michael North

I. **INTRODUCTION**

The Government of the British Virgin Islands ("BVI") requests the assistance of the Central Authority of the United States of America pursuant to the Treaty between the Government of the British Virgin Islands and the Government of the United States of America on Mutual Legal Assistance in Criminal Matters.

The Royal Virgin Islands Police Force is investigating money laundering activities and other offences (*described at Part IV below*) allegedly committed by IPOC International Growth Fund ("IPOC"), a Bermuda registered mutual investment fund and a number of related entities and individuals. These include entities registered in the BVI (Lapal Limited, Albany Invest Limited and Mercury Import Limited), Mr. Jeffrey Galmond, a Danish lawyer and alleged beneficial owner of IPOC and Mr. Michael North, a German banker and Director of IPOC.

II. **RELEVANT FACTS**

**Factual background**

Description of Parties involved in the Investigations

IPOC is a mutual fund incorporated in Bermuda in August, 2000 and is the owner of: Albany Invest Limited, Mercury Import Limited, Leasing Telecom Ltd., Convergence Capital Ltd, and Com Tel Eastern Ltd. Investigations have revealed that Mr. Leonid Reiman (Reiman) has a private beneficial interest in IPOC and its group entities. Mr. Reiman is the Minister of

Telecommunications in Russia since November, 1999. Prior to this he held public office with responsibility for Russian telecommunications.

Mr. Jeffrey Galmond claimed in an affidavit to be the beneficial owner of IPOC. He is a Director of and actively controls IPOC and its related entities.

Mr. Michael Ludgwig Rudolf North is a Director of and actively controls IPOC and its related entities.

The Lapal Limited is a Company registered in the British Virgin Islands (BVI) and it is alleged that the beneficial owner is Mr. Jeffrey Galmond.

Albany Invest Limited and Mercury Import Limited are members of the IPOC Group and are both registered companies in the BVI.

The investigations have revealed that IPOC, Lapal Limited, Albany Invest Limited and Mercury Import Limited and other entities are being used by Mr. Galmond and Mr. North and others as vehicles for laundering the proceeds of fraud, theft and corruption as described below.

The BVI Civil Proceedings

In September 2003, IPOC issued civil proceedings in the BVI in Suit No. 140 of 2003 against Alfa Group, a Russian conglomerate, claiming a 25% stake in Megafon, Russia's third largest mobile phone operator. During these proceedings the BVI High Court ordered IPOC to pay a total of US$40 million into court as security for costs. Instead of paying the funds into the court by way of bank guarantee as directed by the Judge, IPOC paid cash, by way of direct transfer. The money was paid in three tranches by IPOC's BVI solicitors, Smith Hughes and Raworth (SHR), now Maples and Calder as follows:

First the sum of US$23 million was paid by IPOC to SHR on October 7 2003, second the sum of US$7 million was paid to SHR by Russian Telecom Development Corporation (RTDC) on behalf of IPOC on 7 October 2003 and a final sum of US$10,092,000 was paid to SHR by Augmentation Holdings Limited on 18th June 2004.

During the proceedings, a former senior employee and director of IPOC approached the Defendants and offered to explain to them the true nature of IPOC and its operations. *Inter alia*, he explained how he would be given instructions on a weekly basis concerning huge sums of money flowing out of Russia which he would channel through a network of off-shore companies.

In due course, these monies would find their way into one of four Bermudian investment funds (of which IPOC was one), to be returned to the legitimate economy in Russia by the purchase of corporate assets, mainly in the telecommunications sector. He says he created sham loan and consultancy agreements to disguise the true source of the monies that were passing through the IPOC Group companies. A similar mechanism was used in the generation of at least some of the $40 million paid into the BVI Court.



As a result of that information, Alfa and the other Defendants pleaded that the funds paid into the Court by or on behalf of IPOC were the proceeds of crime and that therefore they could not properly have recourse to it should a costs order be made in their favour. In summary, their allegations were that IPOC was beneficially owned by Reiman, who corruptly used his official position to the benefit of IPOC and its related entities.

In answer to these allegations during the Proceedings, IPOC asserted that the funds paid into the Court, and all its operations were legitimate and that it was not involved in money laundering. IPOC produced several affidavits by Mr. Galmond and Mr. North as well as a report produced in August 2004 on their operations from Ernst & Young ('E&Y'), an Accounting Firm.

It is significant to note that this report took the form of an 'agreed-upon procedures' report. The evidence has shown that E&Y did not take any steps to verify the information provided to it by IPOC, Mr. Galmond and Mr. North. E&Y did acknowledge in their report that they accepted at face value the claims made by Mr. Galmond and Mr. North, for example, that Mr. Galmond was the owner of all of the companies within IPOC's Group. <u>They also accepted the evidence of these two individuals that all of the various agreements that generated much of the money flowing into IPOC's group were the product of arm's length arrangements with third parties and that the relevant services had actually been provided.</u>

The evidence gathered thus far has shown that the E&Y Report was facile and dependent upon documents, which is believed to be false and were produced by IPOC, Mr. Galmond and Mr. North. E&Y did not carry out an independent assessment of the key issues, namely beneficial ownership of the assets and whether the transactions concerning them were genuine, or cover for a money laundering scheme. The report was responded to in the BVI proceedings by a report compiled by Mr. Jonathan Philips of Price Waterhouse Coopers (dated 18th October 2004) which found on the basis of the information provided and a limited review that: "I am unable to conclude that the funds that have been paid into the Court as security by IPOC are not as a result of a money laundering scheme as alleged".

Further, in a fourth affidavit of Mr. Galmond dated July, 2004, which was sworn for the purposes of the BVI Civil Proceedings, he explained that he is the beneficial owner of IPOC and its group. In paragraph 97 he deposed, *"The Group belongs to me and the equity contributions that have funded it were mine...."* He sets out how over ten years he secretly amassed a fortune of over US$2 billion in the Russian telecoms market through his covert ownership of a number of companies, which participated in numerous transactions in that market and through which he owns highly valuable stakes in many of the best known companies in Russian telecoms. He deposed that he is a close personal friend of Reiman and that Reiman had no ownership interest in the group and had not improperly used his influence in the development of the group.

These allegations were reported to the BVI Authorities by the Alfa Group and other Defendants. On the basis of these allegations, an investigation was launched into the provenance of the monies deposited in the BVI Court as security for costs and into uncovering whether or not IPOC is simply a front for the laundering of the proceeds of crime of, amongst others, the Russian Telecommunications Minister Mr Leonid Reiman.



### The Zurich Arbitration Proceedings

Upon investigations it was found that the parties' dispute went before the Zurich Arbitral Tribunal. The findings of the Arbitral Tribunal in its Second Partial Award dated 16th May 2006 was that:

(i) IPOC was a money laundering vehicle;

(ii) That IPOC was a company set up on behalf of and beneficially owned entirely by a serving Russian Minister responsible for telecommunications;

(iii) That the said Russian Minister engaged in criminal activity including the taking of bribes and the improper appropriation of State's assets in order to generate the funds which IPOC subsequently used.

### The BVI Investigations

Further documents have been acquired, a number of these being consultancy agreements between, *inter alia,* the BVI companies identified above under the heading 'Description of potential Defendants' and companies around the world, among those were companies incorporated in the USA. The funds that were generated by IPOC for the payment of the US$40 million was purportedly generated by the provision of consultancy services, such agreements involved certain US entities such as those set out in **Appendix 1,** annexed hereto. These agreements show a direct link to the potential defendants in this matter. There is substantial evidence to suggest that these agreements are shams.

Also, investigations revealed that on 11th September, 2003 IPOC's bank account number 068/00/38782 with the Bermuda Commercial Bank (BCB) had a balance of $70.71, but within a 25-day period $27,050,000. were deposited into the said account from a number of corporate sources namely:

| Entity | Country of incorporation | Date of payment | Payment $ |
|---|---|---|---|
| Mercury Import Ltd | BVI | 12/09/2003 | 600,000 |
| Albany Invest Ltd | BVI | 12/09/2003 | 1,200,000 |
| Lapal Ltd | BVI | 30/09/2003 | 4,050,000 |
| Renaissance Advisory | Bermuda | 02/10/2003 | 7,000,000 |
| Leasing Telecom Ltd | Bermuda | 06/10/2003 | 6,200,000 |
| Convergence Capital Ltd | Bermuda | 06/10/2003 | 3,000,000 |
| Com Tel Eastern Ltd | Bermuda | 07/10/2003 | 5,000,000 |
| | | | **27,050,000** |

IPOC, Mr. Galmond and Mr. North explained these deposits, by way of the E&Y report in the following way:



| Entity | Reason for payment |
|---|---|
| Mercury Import Limited | Subscription for shares |
| Albany Invest Limited | Subscription for shares |
| Lapal Limited | Inter-company settlement subsequently converted to subscription for shares |
| Convergence Capital Limited | Loan |
| Leasing Telecom Limited | Subscription for shares |
| Com.Tel Eastern Limited | Loan |

The documents provided by IPOC, Mr. Galmond and Mr. North purported to explain the movement of these funds to IPOC in its Bermuda bank account and then onward transmission to SHR in its BVI bank account at First Caribbean International Bank, for IPOC's purposes. It is notable that the movement of the funds is coincidental with the security for costs application and order. It is an irresistible inference that the funds were moved to satisfy the order.

The agreements were provided by IPOC to E&Y to explain the origin of very substantial cash flows. The counterparties to the agreements, including those incorporated in the USA, have been described variously as *"third parties"*, *"non Group entities"* and *"non-affiliated companies"*. In essence, they are understood to be unconnected with IPOC or its affiliates.

However, the results of various enquiries have given reason to doubt the authenticity of many of these agreements. *For example, certain purported signatories to them have sworn testimony stating that their signatures were forged.* Moreover, it appears at first sight that a number of other signatures may have been forged. The BVI authorities are obtaining the expert opinion of a handwriting expert on this point.

Furthermore, online searches at the registries of Delaware, Kentucky and Oregon show that a number of these *"third party"* companies have registered agents and/or addresses in common, indicating that they may in fact be connected in some way. See **Appendix 1**, annexed hereto.

Thus the BVI Authorities are seeking the assistance of the US Authorities to establish the connection of the US entities in relation to IPOC, by way of conducting interviews and recording of statements regarding the information as requested at 'Part III – Assistance Requested' of this request.

At present, the sum of US$40 million is presently being held in a special account by the BVI High Court.

A restraint order is being sought in relation to the sum presently held by the BVI High Court, with a view to obtaining convictions and, consequently, a confiscation order. It is believed that the movement of money among IPOC and its group of companies and the consultancy agreements which appear to be illegitimate but which were attested to by Mr. Galmond and Mr.



North for the purpose of the E&Y report; the assertions by witnesses that their signatures have been forged on certain agreements, the fact that Mr. Galmond initially swore evidence on behalf of IPOC before the BVI Court that he is the beneficial owner, a position from which IPOC has since recanted from by way of sworn evidence of Mr. David Hauenstein; the overwhelming evidence that Mr. Reiman is the true beneficial owner of IPOC and its group of companies; are evidence that IPOC and its group of companies are corporate shams or façades designed to conceal the true facts about the source of the revenues in IPOC's groups and its true beneficial owner, may justify a Court of competent jurisdiction to lift the corporate veil. Thus the decision to institute criminal charges in the BVI against the potential defendants as identified above.

Preliminary Charges

The charges are preliminarily drafted as of 26th April, 2007 as follows:

(a) **Statement of Offence**

Perjury contrary to section 95 (1) of the Criminal Code

**Particulars of Offence**

Jeffrey Galmond in July of 2004 having been lawfully sworn as a witness in a judicial proceeding, namely Civil Suit No. 140 of 2003 in the Eastern Caribbean Supreme Court holden in the British Virgin Islands wilfully made a material statement in that proceeding which he knew to be false, namely that he beneficially owned IPOC International Growth Fund and its related entities and that Leonid Reiman had no interest in IPOC International Growth Fund.

(b) **Statement of Offence**

Perverting the Course of Justice contrary to section 93 of the Criminal Code

**Particulars of Offence**

IPOC International Growth Fund Ltd., Jeffrey Galmond, Michael Ludwig Rudolf North, Lapal Limited, Albany Invest Limited and Mercury Import Limited in August of 2004, with intent to pervert the course of public justice did a series of acts which had a tendency to pervert the course of public justice in that they produced, or caused to be produced, in Civil Suit No. 140 of 2003 in the Eastern Caribbean Supreme Court, holden in the British Virgin Islands, documents that purported to show that Lapal Limited, Albany Invest



Limited, and Mercury Import Limited received payments from third parties for services rendered when in fact they had not received payments from these third parties and or provided the said services namely:

(i)  Agreements between Albany Invest Ltd. and Euro Resources Ltd.;

(ii)  A consultancy agreement dated 11th September 2003 between Albany Invest Ltd. and Sierra Global LLC;

(iii)  A software agreement dated 28th January, 2003 between Albany Invest Ltd. and Advanta Corporation Ltd.;

(iv)  A consultancy agreement dated 31st March, 2003 between Albany Invest Ltd. and Gamma Bank;

(v)  Two incomplete contracts dated November 2003 and 15th January 2003 and a complete but unsigned contract dated 15th January 2003 between Albany Invest Ltd and Sekom Finland OYAB;

(vi)  A consultancy agreement dated 17th September 2003 between Lapal Limited and Manwood Limited;

(vii)  A consultancy agreement dated 11th August, 2003 between Lapal Limited and Lemex LLC;

(viii)  A consultancy agreement dated 1st August, 2003 between Lapal Ltd. and Netmax LLC;

(ix)  Two consultancy agreements dated 1st August, 2003 and 15th October, 2003 between Lapal Ltd. And Azija Universal SA.



(c) **Statement of Offence**

Furnishing False Information contrary to section 221(1)(b) of the Criminal Code

**Particulars of Offences**

IPOC International Growth Fund Limited, Jeffrey Galmond, Michael Ludwig North, Lapal Limited, Albany Invest Limited and Mercury Import Limited in August of 2004 in furnishing information for an accounting report by the Accounting Firm of Ernst and Young intended to be tendered in the Eastern Caribbean Supreme Court holden in the British Virgin Islands dishonestly and with a view to gain for IPOC International Growth Fund Limited produced to Ernst and Young documents made for an accounting purpose which was or might to their knowledge be misleading, false or deceptive in a material particular in that they purported to show that Lapal Ltd., Albany Invest Ltd. and Mercury Import Limited received payments from third parties for services purportedly rendered when in fact they had not received these payments from third parties namely:

(j)  Agreements between Albany Invest Ltd. Ltd. and Euro Resources Ltd.;

(ii)  A consultancy agreement dated 11th September 2003 between Albany Invest Ltd. and Sierra Global LLC;

(iii)  A software agreement dated 28th January, 2003 between Albany Invest Ltd. and Advanta Corporation;

(iv)  A consultancy agreement dated 31st March, 2003 between Albany Invest Ltd. and Gamma Bank;

(v)  Two incomplete contracts dated November 2003 and 15th January 2003 and a complete but unsigned contract dated 15th January 2003 between Albany Invest Ltd and Sekom Finland OYAB;



(vi)  A consultancy agreement dated 17th September 2003 between Lapal Limited and Manwood Limited;

(vii)  A consultancy agreement dated 11th August, 2003 between Lapal Limited and Lemex LLC;

(viii)  A consultancy agreement dated 1st August, 2003 between Lapal Ltd. and Netmax LLC;

(ix)  Two consultancy agreements dated 1st August, 2003 and 15th October, 2003 between Lapal Ltd. And Azija Universal SA.

(d)  **Statement of Offence**

Furnishing False Information contrary to section 221(1)(b) of the Criminal Code

**Particulars of Offences**

IPOC International Growth Fund Limited, Jeffrey Galmond, Michael Ludwig North, Lapal Limited, Albany Invest Limited and Mercury Import Limited on a date or dates unknown in August 2004 in furnishing information for Civil Suit No 140 of 2003 in the Eastern Caribbean Supreme Court holden in the British Virgin Islands dishonestly and with a view to gain for IPOC International Growth Fund Limited produced documents made for an accounting purpose which was or might to their knowledge be misleading, false or deceptive in a material particular in that they purported to show that Lapal Ltd., Albany Invest Ltd. and Mercury Import Limited received payments from third parties for services purportedly rendered when in fact they had not received these payments from third parties namely:

(i)  Agreements between Albany Invest Ltd. and Euro Resources Ltd.;

(ii)  A consultancy agreement dated 11th September 2003 between Albany Invest Ltd. and Sierra Global LLC;



    (iii)    A software agreement dated 28th January, 2003 between Albany Invest Ltd. and Advanta Corporation Ltd.;

    (iv)    A consultancy agreement dated 31st March, 2003 between Albany Invest Ltd. and Gamma Bank;

    (v)    Two incomplete contracts dated November 2003 and 15th January 2003 and a complete but unsigned contract dated 15th January 2003 between Albany Invest Ltd and Sekom Finland OYAB;

    (vi)    A consultancy agreement dated 17th September 2003 between Lapal Limited and Manwood Limited;

    (vii)    A consultancy agreement dated 11th August, 2003 between Lapal Limited and Lemex LLC;

    (viii)    A consultancy agreement dated 1st August, 2003 between Lapal Ltd. and Netmax LLC;

    (ix)    Two consultancy agreements dated 1st August, 2003 and 15th October, 2003 between Lapal Ltd. And Azija Universal SA.

(e)    **Statement of Offence**

Acquisition, Possession or Use of the Proceeds of Criminal Conduct contrary to section 28(1) of the Proceeds of Criminal Conduct Act.

**Particulars of Offence**

IPOC International Growth Fund, Jeffrey Galmond and Michael Ludwig Rudolf North on or about 7th October 2003 knowing that the sum of united states eight million two hundred



and thirty three thousand and five hundred dollars in whole or in part directly or indirectly represented Lapal Limited's proceeds of criminal conduct acquired or used that property.

(f)  **Statement of Offence**

Acquisition, Possession or Use of the Proceeds of Criminal Conduct contrary to section 28(1) of the Proceeds of Criminal Conduct Act.

**Particulars of Offence**

IPOC International Growth Fund, Jeffrey Galmond and Michael Ludwig Rudolf North on or about 7th October 2003 knowing that the sum of united states four million two hundred and eighty thousand in whole or in part directly or indirectly represented Albany Invest Limited's proceeds of criminal conduct acquired or used that property.

(g)  **Statement of Offence**

Acquisition, Possession or Use of the Proceeds of Criminal Conduct contrary to section 28(1) of the Proceeds of Criminal Conduct Act.

**Particulars of Offence**

IPOC International Growth Fund, Jeffrey Galmond and Michael Ludwig Rudolf North on or about the 7th October 2003 knowing that the sum of united states thirty million dollars in whole or in part directly or indirectly represented Leonid Reiman's proceeds of criminal conduct acquired or used that property.

(h)  **Statement of Offence**

Acquisition, Possession or Use of the Proceeds of Criminal Conduct contrary to section 28(1) of the Proceeds of Criminal Conduct Act.

**Particulars of Offence**

IPOC International Growth Fund, Jeffrey Galmond and Michael Ludwig Rudolf North on or about 18th June 2004 knowing that the sum of united states ten million and ninety two


thousand dollars in whole or in part directly or indirectly represented Leonid Reiman's proceeds of criminal conduct acquired or used that property.

Further investigations have revealed even more entities are involved however, at this time we humbly request the assistance of the US Authorities urgently as set out in Part III of this Request.

On 25th June 2007 the BVI Court ordered that the Director of Public Prosecutions' evidence in the restraint proceedings against IPOC be served on 14th September 2007, with a view to a substantive hearing in early 2008. Owing to the approaching deadline, we would be grateful if the information requested is made available to us as soon as it is identified, rather than waiting for it all to be collated.

### III. ASSISTANCE REQUESTED

1. In light of the information set out above, the BVI Authorities request assistance from the US Department of Justice in obtaining the following information by way of interview and recording of witness statements *(A sample of witness statement is attached and annexed hereto as Appendix 2)*:

    (1) in respect of each of the registered agents identified in **Appendix 1**:

    (i) the identity of the individual from whom it took its instructions to incorporate the companies identified in **Appendix 1**;

    (ii) details of any other companies it has incorporated on the instructions of the same individual;

    (iii) the identity of the ultimate beneficial owner or owners of the companies identified in the **Appendix 1**;

    (iv) whether it has had any business dealings or entered into any contracts with IPOC or any of the BVI companies described above as a representative of the companies identified in **Appendix 1**; and

    (v) whether the agent has ever acted in a business capacity, as a Power of Attorney, or signed an agreement on behalf of any of the companies identified in the **Appendix 1** and, if so, request details thereof; and

    (2) in the event that these enquiries lead to any other officer or adviser of the companies identified in the **Appendix 1**, the same information as identified above, is also requested.

2. Please arrange for Goldstein Golub Kessler & Company International, a US based entity and the auditors of IPOC International Growth Fund Limited, to provide the following information, confirmed by witness statements in respect of each audit it undertook in respect of this entity, and all other related entities :



    (i)    copies of all audit working papers;

    (ii)    details of the individual(s) from whom they received instructions;

    (iii)    copies of the trial balance and underlying accounting records, whether in hard copy or electronic form;

    (iv)    copies of all documents provided by the client;

    (v)    details of any outstanding audit matters;

    (vi)    details of any false / misleading documentation or information provided to them;

    (vii)    copies of all correspondence with the client;

    (viii)    a copy of the Management Letter; and

    (ix)    notes of the audit clearance meeting.

2)    For each of the US-registered companies listed below, please provide the following information:

*Information requested*

    a)    details of all bank accounts held in their name;

    b)    bank statements for all accounts, from their inception to the present;

    c)    all vouchers, or other documentation that identifies the source or destination of the funds, including transfer/payment instructions;

    d)    details of the information provided, and copies of the forms completed, to open the accounts;

    e)    details of signatories to the accounts;

    f)    details of their director(s);

    g)    details of their power of attorney(s);

    h)    details of their beneficial owner(s);

    i)    details of any other companies owned by the beneficial owner;

    j)    details of any involvement of or connection with Mr Leonid Reiman;



k) copies of all correspondence, whether in hard copy or electronic form, between:

  i. the companies identified above;

  ii. those companies and Mr Jeffrey Galmond; and

  iii. the companies and Mr Reiman; and

l) a statement from the directors of the companies in respect of whether they:

  i. entered into a contract with companies by the name of Albany Invest Limited, Lapal Limited, Mercury Import Limited, Montego Consultants Limited or Riversand Holdings Limited; and, if so,

  ii. whether an agreement was signed to that effect and, if so, by whom.

*Companies*

  i) Brandcom LLC;
  ii) Castle Ventures Limited;
  iii) Collins Trading Limited;
  iv) Credger Alliance LLC;
  v) Euro Resources LLC;
  vi) Fortrans LLC;
  vii) Fortrans L.L.C;
  viii) INMAX LLC;
  ix) Intelligence Monetary Service Inc;
  x) King Financial Group LLC;
  xi) Kortem Group GmbH;
  xii) MCT Corporation;
  xiii) Neofund LLC;
  xiv) Netmax LLC;
  xv) Norbury Technologies Inc;
  xvi) Portlex Limited;
  xvii) Pretaler Limited;
  xviii) Russian Telecommunications Development Corporation Inc (RTDC);
  xix) Russian Telecommunications Development Corporation Holdings;
  xx) Rostelecomleasing SA;
  xxi) Sierra Global LLC;
  xxii) Unicross LLC;
  xxiii) Concordia LLC;
  xxiv) Dan River LLC;
  xxv) Logic Continental LLC;
  xxvi) Pac-Media Communications LLC, and
  xxvii) Wimpey Ltd.

Finally, the BVI Authorities understand that a corruption suit was filed in 2006 in the New York South District Court by Mr Rozhetskin, the founder of Megafon, against Mr Reiman. Megafon was the same company that was in issue during the original Civil Suit in the BVI between IPOC and Alfa Group and the other Defendants. The BVI Authorities would be very grateful if a copy of this document could be provided to us.

We humbly request that all information received is collected in the form of witness statements and ask that persons be informed that this statement may be tendered in evidence and they would be liable to prosecution if they wilfully state anything which they know to be false or did not believe to be true in the statement. See **Appendix 2** which sets out the required format for statements admissible in BVI Court.

The assistance of the US Department of Justice in obtaining this information, which is not currently in the possession of the BVI authorities, would be greatly appreciated.

## IV. LAWS OF THE BRITISH VIRGIN ISLANDS

The relevant BVI laws are set out below. Extracts from the statute books are also included.

**Under the Criminal Code, 1997 of the Virgin Islands, section 95 provides:**

"95. (1) *Any person lawfully sworn as a witness, or as an interpreter, in a judicial proceeding who wilfully makes a statement, material in that proceeding, which he knows to be false or does not believe to be true, commits an offence and is liable on conviction to imprisonment for a term not exceeding seven years.*

(2) *Where a statement made for the purpose of a judicial proceeding is not made before the court or tribunal itself but is made on oath before a person authorised by law to administer an oath to the person who makes a statement and to record or authenticate the statement it shall, for the purpose of this section, be treated as having been made in a judicial proceeding.*

(3) *For the purpose of this section, it is immaterial whether*

    (a) *the person making the statement is or is not competent to be a witness and whether or not his evidence is admissible; and*

    (b) *the false testimony is given orally or in writing.*

(4) *The question whether a statement, in respect of which a charge of perjury is made, was material is a question of law to be determined by the court of trial.*

(5) *A person shall not be liable to be convicted of an offence under this section, or of any offences declared by any law to be perjury, solely upon the evidence of one witness as to the falsity of any statement alleged to be false.*

(6) *For the purpose of this section, proceedings before any statutory body or tribunal which is empowered to take evidence on oath shall be deemed to be judicial proceedings.*"



**Under the Criminal Code, 1997 of the Virgin Islands, section 93 provides:**

"93. A person commits an offence and is liable on conviction to imprisonment for a term not exceeding five years, if he
  (a) conspires with any person to accuse any person falsely of any offence or to do anything to obstruct, prevent, pervert or defeat the course of justice;
  (b) in order to obstruct the due course of justice, dissuades, hinders or prevents any person lawfully bound to appear and give evidence as a witness from so appearing and giving evidence, or endeavours so to do; or
  (c) obstructs or in any way interferes with or knowingly prevents the execution of any legal process, civil or criminal."

**Under the Criminal Code, 1997 of the Virgin Islands, section 221 provides:**

"221. (1) Any person who dishonestly, with a view to gain for himself or another or with intent to cause loss to another,
  (a) destroys, defaces, conceals or falsifies any account or any record or document made or required for an accounting purpose, or
  (b) in furnishing information for any purpose, produces or makes use of any account or any such record or document, which to his knowledge is or may be misleading, false or deceptive in a material particular,
commits an offence and is liable on conviction to imprisonment for a term not exceeding seven years."

**Under the Proceeds of Criminal Conduct Act 1997, section 29 provides:**

"29 (1) A person commits an offence if, knowing that any property is, or in whole or in part directly or indirectly represents, another persons proceeds of criminal conduct, he acquires or uses that property or has possession of it.
  (2) It is a defence to a charge of committing an offence under this section that the person charged acquired or used the property or had possession of it for adequate consideration.
  (3) For the purposes of subsection (2),
    (a) a person acquires property for inadequate consideration if the value of the consideration is significantly less than the value of the property; and
    (b) a person uses or has possession of property for inadequate consideration if the value of the consideration is significantly less than the value of his use or possession of the property.
  (4) The provision for any person of services or goods which are of assistance to him in criminal conduct shall not be treated as consideration for the purposes of subsection (2).

..."



> (11) A person who commits an offence under this section is liable
> 
> (a) on summary conviction, to imprisonment for a term not exceeding six months or to a fine not exceeding three thousand dollars, or both; or
> 
> (b) on conviction on indictment, to imprisonment for a term not exceeding fourteen years or to a fine not exceeding twenty thousand dollars, or both.
>
> ...
>
> (13) For the purposes of this section, having possession of any property shall be taken to be doing an act in relation to it."

**Under the Proceeds of Criminal Conduct Act 1997, section 30 provides:**

> "30 (1) A person commits an offence if he
> 
> (a) conceals or disguises any criminal conduct property which is, or in whole or in part directly or indirectly represents, his proceeds of criminal conduct, or
> 
> (b) converts or transfers that property or removes it from the Territory,
> 
> for the purpose of avoiding prosecution for an offence to which this Act applies or the making or enforcement in his case of a confiscation order.

The information that we seek will not be used except in relation to the matters detailed herein without your consent.

This request is made pursuant to the Mutual Legal Assistance Treaty between the United States of America and United Kingdom extended to the British Virgin Islands. Further in the spirit of reciprocity the United States authorities are kindly asked to give effect to this request.

Thank you for your assistance in this important matter.

Dated this 21st day of August, 2007

BY: TERRENCE F. WILLIAMS
DIRECTOR OF PUBLIC PROSECUTIONS



US Request

Appendix 1

| Registered agent | Registered agent address | Entity | Company No. |
|---|---|---|---|
| Anglo Management (USA) Inc | 62 Rockford Road, Wilmington, New Castle, Delaware 19806 | Neofund LLC | 3747969 |
| | | Unicross LLC | 3556484 |
| | | Brandcom LLC | 3577837 |
| American Incorporators Ltd | 1220 N Market Street, Suite 808, New Castle, Wilmington, Delaware 19801 | Norbury Technologies Inc | 3408999 |
| | | Collins Trading Ltd | 2696764 |
| | | Kortem Group GmbH | 3267572 |
| | | Portlex Ltd | 3535193 |
| | | Wimpey Ltd | 3304906 |
| IOS Group Inc | 1220 N Market Street, Suite 808, New Castle, Wilmington, Delaware 19801 | INMAX LLC | 3058156 |
| Registered Agents Ltd | 1220 N Market Street, Suite 808, New Castle, Wilmington, Delaware 19801 | Intelligence Monetary Service Inc | 2495145 |
| Data Research Inc | 8130 SW Beaverton-Hillsdale Hwy, Portland, Oregon 97225 | Fortrans L.L.C. | 017735-97 |
| | | King Financial Group LLC | 079257-95 |
| Incorporating Services Ltd | 8130 SW Beaverton-Hillsdale Hwy, Portland, Oregon 97225 | Logic Continental LLC | 159070-90 |
| Charles Mathias | 942 Windermere Drive NW, Salem, Oregon 97304 | Sierra Global LLC | 108718-95 |
| Unitrust Management Ltd | 942 Windermere Drive NW, Salem, Oregon 97304 | Fortrans LLC | 208815-95 |
| Pacific Registered Agents Inc | 128 S Baxter Blvd, Lexington, KY 40515 | Euro Resources LLC | 0528833 |
| Unitrust Management LLC | 828 Lane Allen, 219 Lexington, KY 40504 | Credger Alliance LLC | 0566538 |